# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CARL D. NEFF,** | : | |
| 1521 Concord Pike, Ste 301 | : | |
| Wilmington, DE 19803 | : | **Civil Action No. 20-03531-KBJ** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Oral Argument Requested** |
| | : | |
| **MURIEL BOWSER, in her official** | : | |
| **Capacity as Mayor of the District of** | : | |
| **Columbia,** | : | |
| John A. Wilson Building | : | |
| 1350 Pennsylvania Ave., NW | : | |
| Washington, DC 20004 | : | |
| | : | |
| **DISTRICT OF COLUMBIA,** | : | |
| c/o Karl A. Racine, Attorney General | : | |
| 400 6th Street, NW | : | |
| Washington, DC 20001 | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated: February 19, 2021

Carl D. Neff (D.C. Bar No. 987577)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Tel.: (302) 482-4244

*Pro se Plaintiff*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.      PLAINTIFF'S CLAIMS FOR PROSPECTIVE RELIEF ARE JUSTICIABLE ......... 2

        A.  Plaintiff Has Standing, as Redressability does Not Require that Relief Remove all
           Barriers............................................................................................................2

        B.  The Court Should Not Abstain from Deciding the Constitutional Challenge to D.C.
           Code § 42-3505.01(k)(3) ................................................................................4

    II.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS....................................5

        A.  The Eviction Ban Statutes Violate Plaintiff's Right to Access the Courts. ..................5

        B.  The Eviction Ban Violates The Contract Clause By Denying Landlords The Right
           To Enforce Their Residential Lease Agreements Without Providing Compensation
           Or Limiting The Ban To The Government's Legitimate Interests. ..............................7

             1.   The Ban Substantially Impairs Contractual Obligations By Removing
                 The Key Remedy For Lease Violations..........................................................7

             2.   Defendants Fail to Compensate for the Duration of the Ban; the Ban is
                 More Extensive Than Necessary. ..................................................................9

        C.  The Eviction Ban Causes a Physical Taking. ...............................................................12

             1.   The Eviction Ban Compels Physical Invasion...............................................12

             2.   An Injunction is Proper..................................................................................13

    III.    PLAINTIFF FACES IRREPARABLE HARM........................................................14

        A.  Constitutional Violations Constitute Irreparable Harm. ............................................14

    IV.    THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVOR
           INJUNCTIVE RELIEF.............................................................................................16

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) ..................................... 10

*Archdiocese of Wash. v. WMATA*, 897 F.3d 314 (D.C. Cir. 2018)........................................ 15, 16

*Armstrong v. United States*, 364 U.S. 40 (1960) ........................................ 18

*Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012) ....................................... 12

*Baptiste v. Kennealy*, 2020 WL 5751572 (D. Mass. Sept. 25, 2020) .............................. 1, 7, 9, 11

*Barnitz v. Beverly*, 163 U.S. 118 (1896) ........................................ 7

*Block v. Hirsh*, 256 U.S. 135 (1921).................................... 9, 10

*Borger Management, Inc. v. Abel Hernandez Cruz, et al.*,
    Case No. 2020 LTB 006637 (D.C. Super. Dec. 16, 2020).................................... 6, 7

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) ................................. 1

*Edwards v. Kearzey*, 96 U.S. (6 Otto) 595 (1877) ........................................ 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................ 14, 15

*Goodwin v. Walton Cty. Florida*, 248 F. Supp. 3d 1257 (N.D. Fla. 2017)............................ 13, 14

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ........................................ 16

*Home Building & Loan Assn. v. Blaisdell,* 290 U.S. 398 (1934).............................................. 9, 10

*Horne v. Dep't of Agric.*, 576 U.S. 350 (2015)................................................. 1, 13, 14

*Larson v. Valente*, 456 U.S. 228 (1982) ........................................ 2

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)..................................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................. 3, 4

*Lynch v. United States*, 292 U.S. 571 (1934)................................................ 8

*Kucera v. State, Dep't of Transp.*, 995 P.2d 63 (Wash. 2000) ................................. 13, 14

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ........................................ 2

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ...................................................... 15

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)............................................................. 1

*Pernell v. Southall Realty,* 416 U.S. 363 (1974) ....................................................................... 5

*Peters v. Vill. of Clifton*, 498 F.3d 727 (7th Cir. 2007) ...................................................... 13, 14

*Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190 (D.D.C. 2005) ........................................ 15

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) ......................................................... 4

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ...................................................................... 11

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection*,
    560 U.S. 702, 723 (2010) ...................................................................................... 13, 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002)................. 12

*U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977)........................................................ 7

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)............................ 2

*W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935) .......................................................... 10, 11

*W.B. Worthen v. Thomas*, 292 U.S. 426, 432 (1934)..................................................................10

*Yee v. City of Escondido*, 503 U.S. 519 (1992)..................................................................... 12, 13

**Statutes**

85 Fed. Reg. 55,292–97 (January 29, 2021) ................................................................................ 17

D.C. Code § 16-1501 ................................................................................................................ 3, 5

D.C. Code § 16-1502 ................................................................................................................... 3

D.C. Code § 42-3505.01 .......................................................................................................... 2-5

District of Columbia Rents Act, Ch. 80, 41 Stat. 298 § 109 (1919)............................................ 10

**Other Authorities**

Eviction Lab, COVID-19 Resources, Eviction Tracking System............................................16, 17

Further, Salem, *False Alarm*, Mercatus Center (Aug. 24, 2020),
   https://www.mercatus.org/bridge/commentary/false-alarm. ...................................................17

Merriam-Webster.com. 2021. https://www.merriam-webster.com (February 19, 2021)................6

Thomas W. Merrill, Anticipatory Remedies for Takings,
   128 Harv. L. Rev. 1630, 1662 (2015).........................................................................................14

Plaintiff, Carl D. Neff, hereby files this combined Memorandum in further support of his Motion for Preliminary Injunction and for Summary Judgment, and in Opposition to Defendants' Cross-Motion for Summary Judgment or, in the alternative, to Dismiss Plaintiff's Amended Complaint.

## INTRODUCTION

As a federal district court in Massachusetts recently put it, "the COVID-19 pandemic is not a blank check for the Governor and other elected officials." *Baptiste v. Kennealy*, 2020 WL 5751572, at *6 (D. Mass. Sept. 25, 2020). *See also Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (Alito, J., dissenting) ("[A] public health emergency does not give Governors and other public officials carte blanche to disregard the Constitution for as long as the medical problem persists."). Yet Defendants Mayor Muriel Bowser and the District of Columbia (collectively, "Defendants") speak as if violating Plaintiff's constitutional rights is the only means available for confronting the pandemic's impact on housing. Perhaps they "are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922). *See also Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015) ("The Constitution, however, is concerned with means as well as ends."). Plaintiff does not ask Defendants to stand idle while the pandemic rages. Plaintiff simply asks that they avoid inflicting collateral damage on constitutional rights.

**ARGUMENT**[1]

I.    **PLAINTIFF'S CLAIMS FOR PROSPECTIVE RELIEF ARE JUSTICIABLE.**

A.    **Plaintiff Has Standing, as Redressability does Not Require that Relief Remove all Barriers.**

Defendants argue that Plaintiff lacks standing because—should this Court grant relief—Plaintiff "cannot show that injury caused by the Eviction Moratorium is certainly impending or that the relief requested concerning any Moratorium provision would likely redress his alleged injury." (Def. Mem. at 13-14.)  The thrust of Defendants' argument is that Plaintiff nonetheless must assert his action in the D.C. Superior Court, and that "any injury is not certainly impending because the Eviction Moratorium may not apply at all to plaintiff's case", given the language of D.C. Code § 42-3505.01(k-1), which permits eviction under certain limited circumstances. Defendants' argument fails because redressability is satisfied even if judgment would remove only one barrier to full relief.

A plaintiff can seek redress even if the challenged action is only one of several obstacles to full relief. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–64 (1977) (holding that a plaintiff cannot be denied standing just because additional obstacles would remain after relief was granted); *see also Larson v. Valente*, 456 U.S. 228, 243 (1982) (holding that a favorable decision need not relieve a plaintiff's every injury to satisfy the redressability requirement). Defendants wrongly assume that "a small incremental step" does not provide redress. *Massachusetts v. E.P.A.*, 549 U.S. 497, 524 (2007). Such an assumption "would doom most challenges to regulatory action" because lawmakers "do not generally resolve massive problems in one fell swoop." *Id.*

---

[1] Plaintiff hereby incorporates the Factual Background from his Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Summary Judgment ("Opening Memorandum" or "Pl. Mem.") (D.I. 6).  Each capitalized term not otherwise defined herein shall have the meaning ascribed to such term in Plaintiff's Opening Memorandum.

Even where other regulations continue to apply, relief from one of several regulations has important consequences. Such relief reduces the number and stringency of regulatory requirements, the range of possible punishments, and the number of governments or agencies regulating an activity. Plaintiff's requested relief would, at minimum, bring him one step closer to being able to use his property as he wishes. That suffices for standing purposes.

Defendants attempt to rely upon D.C. Code § 42-3505.01(k-1) to argue that "any injury is not certainly impending because the Eviction Moratorium may not apply at all to plaintiff's case." But as discussed *infra*, while D.C. Code § 42-3505.01(k-1) permits eviction under limited circumstances, a landlord still cannot: (i) issue to a tenant a notice to vacate under D.C. Code § 42-3505.01(q)(1)(A); (ii) serve a summons upon a tenant under D.C. Code § 16-1502, or (iii) commence an eviction lawsuit in the first place under D.C. Code § 16-1501(b). No "appropriate proceedings have occurred" in the D.C. Superior Court because the Eviction Ban Statutes prevent Plaintiff from taking the procedural steps of commencing any proceedings in the first place (Def. Mem. at 15). A landlord cannot even commence an eviction lawsuit before the D.C. Superior Court without violating a statute. This absurd result is conveniently overlooked by Defendants. Plaintiff's hands are tied in light of the Eviction Ban Statutes.

Defendants next argue, under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), that "'it must be likely, as opposed to merely speculative, that' his alleged 'injury will be redressed by a favorable decision.'" (Def. Mem. at 15.) Defendants then assert that Plaintiff failed to establish the underlying eviction case. But Defendants misconstrue *Lujan*. That decisions states that:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Lujan*, 504 at 562.

Here, Plaintiff himself is the object of the action by Defendants, and thus there is "little question … that a judgment preventing or requiring the action will address it."  *Id.* Defendants apply the standard set forth in *Lujan* when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*", which is not applicable here.  Thus this Court need not consider the underlying merits of Plaintiff's claim for eviction against Tenant.

Regardless, even if Defendants' interpretation of *Lujan* was correct (it is not), Plaintiff has more than shown a likelihood of success that he would be successful in an eviction action, were such a case permitted to proceed.  While Defendants assert that Plaintiff relies upon a "many-linked chain of what-ifs, dependent upon the decisions of third parties" (Def. Mem. at 17), this is hardly the case.  Plaintiff has alleged and provided sufficient evidence of numerous breaches by the Tenant of the Lease.   Plaintiff has provided more than substantial evidence that he would prevail in an eviction action.  Plaintiff's injury is clearly redressable by this Court.

**B.**    **The Court Should Not Abstain from Deciding the Constitutional Challenge to D.C. Code § 42-3505.01(k)(3)**

Defendants next argue that this Court should abstain from exercising jurisdiction over Plaintiff's challenge to D.C. Code § 42.3505.01(k) under the *Pullman* doctrine.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Defendants' argument is based upon a false premise that Plaintiff could even commence an action before the D.C. Superior Court to determine whether Plaintiff's claim fits into one of the exceptions to the Moratorium under Section 42.3505.01(k-1).  Defendants again overlook the fact that the Eviction Ban Statutes do not permit Plaintiff to commence an eviction action in the first place, serve a summons upon Tenant, or even serve an

eviction notice upon Tenant.  Defendants essentially argue that Plaintiff should violate the Eviction Ban Statutes (and expose himself to liability for so doing) so that the D.C. Superior Court could rule on whether an exception may apply.  This assertion is nonsensical.  This Court should not abstain from deciding the constitutional challenge to D.C. Code § 42-3505.01(k)(3) because, in light of the Eviction Ban Statutes, this is the only Court to which Plaintiff can turn.


II.    **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

A.    **The Eviction Ban Statutes Violate Plaintiff's Right to Access the Courts.**

Defendants argue that because the Eviction Ban Statutes prevent a landlord from accessing the courts to evict a tenant during the public health emergency, the right to evict a tenant no longer exists, and therefore a landlord cannot challenge the deprivation of such right.  This circular reasoning should be rejected by the Court.

To be clear, Washington, D.C. has not abolished evictions as a cause of action (nor has any other jurisdiction, for that matter).  Rather, the Eviction Ban Statutes prevent a landlord from accessing the Courts and taking other procedural steps necessary to evict a tenant during the public health emergency.

*Pernell v. Southall Realty,* 416 U.S. 363, 383 (1974) is inapposite.  In *Pernell*, the court ruled that a right to jury trial in eviction actions under D.C. Code § 16-1501 does not prevent legislature from moving those actions exclusively to administrative tribunals, where a jury is not available.  The challenged act in *Pernell* did not altogether prevent a landlord from accessing the courts to evict a tenant, and lends no support to Defendants' position.

Tellingly, Defendants cite to no authority supporting their view that any moratorium amounts to an abolishment of an underlying cause of action.  The very definition of "moratorium",

5

as a "a legally authorized period of delay in the performance of a legal obligation or the payment

of a debt", undercuts Defendants' argument that such cause of action has been abolished.[2]

Defendants raised these same arguments before the D.C. Superior Court in *Borger*

*Management, Inc. v. Abel Hernandez-Cruz, et al.,* Case No. 2020 LTB 006637 (D.C. Super. Dec.

16, 2020).  The D.C. Superior Court properly rejected these arguments, holding that the Eviction

Ban Statutes do in fact restrict a landlord's right of access to the courts.  Defendants offer no

compelling reason why this Court should deviate from the earlier decided and well-reasoned

opinion by the D.C. Superior Court.

Defendants argue in footnote 6 of their Opposition Brief that "because the Moratorium

does not in fact infringe on plaintiff's right to access courts, this Court need not apply any level of

scrutiny."  (Def. Mem. n. 6.) But as stated above, the Eviction Ban Statutes clearly infringe

Plaintiff's access to the courts.  The D.C. Superior Court appropriately applied intermediate level

review, stating as follows:

> [S]everal factors justify the application of intermediate scrutiny: the absolute nature
> of the filing moratorium; its lengthy and indefinite duration; property owners' right
> to summary proceedings in eviction cases; the constitutional protection of private
> property rights; property owners' inability to regain possession from an unwilling
> occupant without a court order; the loss of critical interim protection afforded by
> protective orders during the moratorium; and the substantial delay in property
> owners' ability to regain possession of their property until months after the public
> health emergency has ended. The cumulative burden on  property owners' right of
> access to courts warrants intermediate scrutiny.

*Borger,* slip op. at 14.  Meanwhile, the D.C. Superior Court properly rejected rational basis review

(advocated for by Defendants):[3]

> In contrast, rational basis review (the standard that the District and *amici* contend
> should apply) does not provide for consideration of the burdens imposed by the
> filing moratorium on the constitutional rights of property owners: under rational

---

[2] Merriam-Webster.com. 2021. https://www.merriam-webster.com (February 19, 2021).
[3] Curiously, Defendants appears to have advocated for two separate levels of review.  In *Borger*, Defendants advocate
rational basis review, whereas here, Defendants advocate for no standard of review at all.  Regardless, each of these
inconsistent positions should be rejected.

basis review, "it suffices if the law could be thought to further a legitimate governmental goal, without reference to whether it does so at inordinate cost." *See Fox*, 492 U.S. at 480 (emphasis added).

*Borger*, slip op. at 30-31.

For all the reasons set forth in the *Borger* opinion, and as set forth in Plaintiff's Opening Memorandum, the Court should rule the Eviction Ban Statutes unconstitutionally impede Plaintiff's right of access to the courts.

**B.  The Eviction Ban Violates the Contract Clause by Denying Landlords the Right to Enforce their Residential Lease Agreements Without Providing Compensation or Limiting the Ban to the Government's Legitimate Interests.**

**1.  The Ban Substantially Impairs Contractual Obligations by Removing the Key Remedy for Lease Violations.**

The Supreme Court has consistently held that restrictions on enforcement can substantially impair obligations of contract without actually altering the terms of the agreement itself. *See, e.g., U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 20 n.17 (1977) ("The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement. . . . The parties may rely on the continued existence of adequate statutory remedies for enforcing their agreement . . . ."); *Barnitz v. Beverly*, 163 U.S 118, 131 (1896) ("[T]he change of remedy [can be] detrimental to such a degree as to amount to an impairment of the plaintiff's right[.]"). A federal district court recently held that a Massachusetts eviction ban substantially impaired contractual obligations by removing the remedy of eviction because the "rights to evict and recover property if a tenant does not pay rent are important elements of the contractual relationship that a lease creates." *See Baptiste*, 2020 WL 5751572, at *16–17.

Defendants emphasize the temporary nature of the eviction ban in arguing that the ban does not substantially impair contractual obligations. (Def. Mem. at 23, 27.) Yet Defendants do not dispute Plaintiff's allegations and declarations establishing that Tenant failed to adhere to the contractual provisions of the Lease of Plaintiff's residential lease agreement, and thus even a temporary suspension substantially impairs the contractual obligations owed thereunder.

Defendants go a step further in arguing that removal of an enforcement mechanism as a general matter does not impair contractual obligations. (Def. Mem. at 26.) But Defendants fail to address *Lynch v. United States*, 292 U.S. 571, 580 (1934), which states that removal of enforcement can result in substantial impairment. Lynch's statement of law restates what a century of caselaw before it had established repeatedly. *See* Plaintiff's Opening Memorandum, at 13-14 (listing cases); *see also Edwards v. Kearzey*, 96 U.S. (6 Otto) 595, 600 (1877) ("The obligation of a contract includes every thing within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence.").

Defendants also attempt to justify the Eviction Ban Statutes by asserting that "District law has significantly, specifically and continuously regulated the right to possession as between landlords and tenants for nearly fifty years." (Def. Mem. at 25.)  But none of the examples of regulations provided by Defendants amount to a suspension of landlords' longstanding right to evict for an indefinite length of time, an action with no known precedent in Washington, D.C. The Massachusetts federal district court recently rejected this strained argument. While recognizing the landlord-tenant relationship is heavily regulated, the Massachusetts court nonetheless found "that a reasonable landlord would not have anticipated a virtually unprecedented event such as the COVID-19 pandemic that would generate a ban on even initiating eviction actions against tenants

who do not pay rent and on replacing them with tenants who do pay rent." *Baptiste*, 2020 WL 5751572, at *16.

### 2. Defendants Fail to Compensate for the Duration of the Ban; the Ban is More Extensive Than Necessary.

Plaintiff's Opening Memorandum lists Supreme Court cases that establish a clear pattern: where a property owner's right of return is protected, a ban on foreclosure or eviction withstood Contract Clause challenge. (Pl. Mem. at 15-17.)  By contrast, where that right is not protected, the law was struck down. *Id.*

Defendants make little attempt to distinguish *Blaisdell, Block,* and other cases cited in Plaintiff's Opening Memorandum on pages 21-25, simply arguing that "the differences in policy reflect the differing nature of the emergencies they were designed to meet."  (Def. Mem. at 32.) Defendants go on to argue that "[n]one of the cases plaintiff cites, for example, involve regulations designed to permit everyone to shelter in place, with adequate distance from others, as needed, during a pandemic." *Id.*  But there is no basis to overlook established Supreme Court precedent simply because the regulations at issue in those cases were not passed under the exact same emergency.  In *Block*, the Supreme dealt with a rent-control law that banned evictions during a World War I housing shortage.  And in *Home Building & Loan Assn. v. Blaisdell,* 290 U.S. 398 (1934), the Supreme Court considered the constitutionality of a Minnesota law passed during the Great Depression allowing its courts to extend the period of redemption from foreclosure sales for any time that was believed to be just and equitable.  Clearly, these cases are instructive to analyzing whether the Eviction Ban Statutes violate the Contract Clause.

Defendants also rely upon *Block* in stating that "the Supreme Court upheld a temporary prohibition on actions for possession in the District on public health grounds almost a century ago."  (Def. Mem. at 28.)  But Defendants overlook a key distinguishing fact, highlighted in

Plaintiff's Opening Memorandum.   In *Block*, the majority of a divided court noted that "[m]achinery [wa]s provided to secure to the landlord a reasonable rent" during the eviction ban, *id*. at 157, and the tenant was protected from eviction only "so long as he pa[id] the rent and perform[ed] the other terms and conditions of the lease." District of Columbia Rents Act, Ch. 80, 41 Stat. 298 § 109 (1919). Notably, the *Blaisdell* majority later found this fact directly relevant to the Contract Clause analysis, noting that, in *Block*, "provision was made for reasonable compensation to the landlord during the period he was prevented from regaining possession." *Blaisdell*, 290 U.S. at 441–42.   Defendants fail to address this notable distinction in their Opposition.

Moreover, the eviction ban is not "appropriately tailored to the emergency that it was designed to meet." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978). Defendants argue that there is no tailoring requirement in a Contract Clause claim.   (Def. Mem. at 31.)   But *Allied Structural Steel* is not the only case that established a tailoring standard for interference with private contracts.   In *W.B. Worthen v. Thomas*, 292 U.S. 426, 432 (1934), the Supreme Court struck down an emergency measure protecting life insurance proceeds from garnishment by creditors because "the legislation was not limited to the emergency and set up no conditions apposite to emergency relief." The Court stated that the government, even in meeting a "pressing public disaster," must employ means that are "limited by reasonable conditions appropriate to the emergency." *Id*. at 433. The Supreme Court again affirmed this principle in *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 63 (1935), holding that governments cannot impair contracts "without moderation or reason or in a spirit of oppression." (emphasis added.) Hence, government impairment of contracts, even in an emergency, must be moderate and limited to the emergency.

Washington, D.C.'s eviction moratorium does not satisfy this standard. The eviction moratorium extends beyond what is necessary to achieve the government's interests. (Pl. Mem. at 18-19.)  The Eviction Ban Statutes apply broadly to all tenants, regardless of what breaches of a lease agreement are being violated, or likelihood of finding alternative housing.  *Id.*  The Eviction Ban Statutes do not require some showing of hardship that would indicate a likelihood of homelessness upon eviction. While the government need not select the least restrictive means of pursuing its interests, the availability of less-restrictive means bears on whether the government has acted "without moderation." *W.B. Worthen v. Kavanaugh*, 295 U.S. at 60; cf. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995) ("We agree that the availability of these options, all of which could advance the Government's asserted interest in a less intrusive manner to respondent's First Amendment rights, indicates that § 205(e)(2) is more extensive than necessary.").

While the Massachusetts District Court determined that the Massachusetts eviction ban did not violate the Contract Clause, it stated: "It is . . . a close question whether the Moratorium is a reasonable means of addressing the undisputed significant and legitimate need to combat the spread of the COVID-19 virus." *Baptiste*, 2020 WL 5751572, at *14. The Court expressed the specific concern that an extension beyond the October 17, 2020, expiration date might push the ban past the constitutional limit. *See id*. at *7. If the Massachusetts ban was a close question, then the Washington, D.C. ban clearly crosses the line. First, the ban extends well beyond the length of the Massachusetts ban at the time the federal district court decided the case, which was set to expire on October 17. Second, the Massachusetts ban at least left open the opportunity to pursue certain remedies through a breach of contract claim.  By contrast, Washington, D.C.'s Eviction Ban Statutes prevent commencing an eviction action entirely.

For these reasons, the Moratorium violates the Contract Clause.

### C.  The Eviction Ban Causes a Physical Taking.

#### 1.   The Eviction Ban Compels Physical Invasion.

A physical occupation of property is a categorical taking. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). The eviction ban causes a physical taking of Plaintiff's property by authorizing current occupants to remain on the property in violation of the Lease and without Plaintiff's consent.

Defendants argue that Plaintiff's takings claim is meritless because the regulation of landlord-tenant relationships, as a general matter, falls outside physical takings liability. (Def. Mem. at 33.) The suggestion that landlord-tenant laws can never result in a physical taking defies the Supreme Court's refusal to recognize more than a handful of per se rules in the takings context. *See Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("[N]o magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area."); *Tahoe-Sierra*, 535 U.S. at 342 ("The temptation to adopt what amount to per se rules in either direction must be resisted.") (cleaned up). The Supreme Court, moreover, has held that "a landlord's ability to rent his property may not be conditioned on forfeiting the right to compensation for a physical occupation. . . . The right of a property owner to exclude a stranger's physical occupation of his land cannot be so easily manipulated." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982).

Defendants cite *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992), which only stands for the proposition that states can regulate landlord-tenant relationships where the tenants are "invited" onto the property. Here, however, the Tenant has exceeded the scope of Plaintiff's invitation in

light of numerous violations of the Lease.  And Plaintiff's consent to tenant occupancy ended when the Tenant ceased honoring materials term of the Lease.

Additionally, because the Moratorium prevents Plaintiff from initiating any eviction proceedings, Plaintiff is forced to maintain the tenancy in perpetuity, or at least until the Defendants decide to lift the ban. Therefore, Plaintiff is compelled against his objection to not terminate the tenancy, going far beyond the rent-control ordinance at issue in *Yee*. *Yee*, 503 U.S. at 528 ("A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy.").

### 2.  An Injunction is Proper.

Defendants incorrectly argue that Plaintiff is not entitled to an injunction.  (Def. Mem. at 35.).  While the conventional remedy for a taking is just compensation, injunctive relief is available in limited circumstances. *See, e.g., Goodwin v. Walton Cty., Florida*, 248 F. Supp. 3d 1257, 1266 (N.D. Fla. 2017); *Peters v. Vill. of Clifton*, 498 F.3d 727, 732–33 (7th Cir. 2007). Indeed,

> Courts have generally found remedies to be inadequate [thus permitting injunctions] in three circumstances: (1) the injury complained of by its nature cannot be compensated by money damages, (2) the damages cannot be ascertained with any degree of certainty, and (3) the remedy at law would not be efficient because the injury is of a continuing nature.

*Kucera v. State, Dep't of Transp.*, 995 P.2d 63, 69 (Wash. 2000). *See also Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection*, 560 U.S. 702, 723 (2010) (stating that there was "no reason why [compensation] would be the exclusive remedy for a judicial taking") (plurality opinion); *Horne*, 569 U.S. at 528 (allowing a party to raise takings as a defense to a fine rather than "require the party to pay the fine in one proceeding and then turn around and sue for recovery of that same money in another proceeding").

13

Defendants fail to recognize that federal courts have long shown a willingness to allow for injunctive relief in situations where damages do not fully remedy the harm or where compensation would result in duplicative litigation. *See, e.g., Goodwin*, 248 F. Supp. 3d at 1266; *Peters*, 498 F.3d at 732–33. *See also Stop the Beach*, 560 U.S. at 723 (describing the remedy of compensation as "even rare for a legislative or executive taking").

Currently, Plaintiff is suffering an injury that is "of a continuing nature." *Kucera*, 995 P.2d at 69. With every Moratorium extension that is issued, Plaintiff suffers additional harm. Further, quantifying Plaintiff's injuries is not as easy as calculating damages. Tenant has caused considerable damage to the Property, has exposed Plaintiff to considerable fines from the DCRA, and more recently, has continued to damage the Property after Plaintiff expended substantial sums to remediate the damage previously caused by Tenant. Moreover, an injunction is appropriate and more economical because it offers a far less costly means of settling the takings claims that will arise from the ban than case-by-case litigation. *See Horne*, 569 U.S. at 528 (allowing a party to raise takings as a defense to a fine to avoid duplicative litigation); Thomas W. Merrill, Anticipatory Remedies for Takings, 128 Harv. L. Rev. 1630, 1662 (2015) (finding that courts generally allow anticipatory relief in order to avoid duplicative litigation).

Finally, Plaintiff's damages are not consequential.  They are a direct result of the Moratorium.  Had Plaintiff been able to engage in legal proceedings to evict his Tenant, the damages could have been avoided.

### III.   PLAINTIFF FACES IRREPARABLE HARM

#### A.  Constitutional Violations Constitute Irreparable Harm.

Constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of

constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347 (1976) (same); *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018) ((quoting *Elrod v. Burns*, 427 U.S. 347 (1976)) (same).

Despite a long line of precedent to this effect, Defendants argue that Plaintiff must also demonstrate likely irreparable harm independent of a constitutional violation. (Def. Mem. at 38.) This argument, as a practical matter, would do away with the longstanding presumption that constitutional violations are irreparable as a matter of law.   Defendants reliance upon federal district court opinion in *Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190, 204 (D.D.C. 2005) for this proposition fails.   In *Leavitt*, the plaintiff did not allege that its constitutional rights were infringed upon, nor did the District Court make such a finding in that decision.[4]   Defendants cite to *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018) (Resp. Br. at 38), but that decision supports Plaintiff's position.   There, the Court found that plaintiff had not established a likelihood of success on the merits, and thus could not establish irreparable harm.   But it stated:

> Were the Archdiocese to show a likelihood of success on the merits … it would prevail on the final three factors because "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury,'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion)).

*WMATA*, 897 F.3d at 334.

Here, Plaintiff has established via declaration that he is suffering economic harm due to nonpayment and other lease violations, which Defendants do not seriously dispute. Defendants' constitutional violations, when coupled with that economic harm, clearly cause irreparable injury.

---

[4] In *Leavitt*, plaintiff sought a declaratory judgment that defendants' regulations violated the Administrative Procedure Act, 5 U.S.C. §§ 553, 706, and the Medicare Act, 42 U.S.C. §§ 1395hh(b), 1395m(j)(2), and to vacate and enjoy enforcement of those regulations.

## IV. THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVOR INJUNCTIVE RELIEF.

The public interest and hardship inquiries favor Plaintiff. Courts have repeatedly held that violations of federal law, particularly constitutional law, are always against the public interest. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("enforcement of an unconstitutional law is always contrary to the public interest"); *Archdiocese of Wash.*, 897 F.3d at 335 ("the public interest favors the protection of constitutional rights").

Defendants cast aside this long-standing precedent, and instead attempt to argue that Plaintiff did not act quickly enough. But even if this was the standard (it is not, and Defendants cite to no case law in support thereof), Plaintiff acted with alacrity. Plaintiff filed this action within mere weeks of his property being flooded in October 2020 and requiring substantial renovations due to his Tenant's misconduct. And Plaintiff never argued that Tenant's prior conduct in the summer gave rise to the emergency—they were simply further examples of Lease violations by the Tenant.

Defendants argue that "enjoining enforcement of the Moratorium would jeopardize the safety and well-being of evicted tenants, other residents they may be forced to live with and, indirectly, all residents." (Def. Mem. at 42.) This concern is conjecture. As for Plaintiff, preliminary relief will only allow Plaintiff to institute an eviction proceeding. There is no guarantee that by beginning this proceeding that Tenant will actually be evicted, as tenants still retain a variety of defenses to eviction.

On a broader level, the fear that preliminary relief will result in a flood of evictions does not appear to be grounded in reality. Existing data indicate that eviction rates during the pandemic have in fact been below average in metropolitan areas without a moratorium in place. *See* Eviction

Lab, COVID-19 Resources, Eviction Tracking System.[5] This comports with data from the Great Recession showing that eviction filing rates actually dropped during the downturn. *See* Salim Furth, False Alarm, Mercatus Center (Aug. 24, 2020).[6] The reason is straightforward: many landlords would prefer to hold onto an existing tenant that is struggling than risk a lengthy vacancy in a troubled market. *See id.* Defendants' concerns therefore do not demonstrate a strong public interest disfavoring relief.

Moreover, even if an eviction surge were likely, the majority of tenants' interests would still be protected by the CDC order banning nationwide evictions. *See* 85 Fed. Reg. 55,292–97 (January 29, 2021). Defendants respond that the CDC's Moratorium is less comprehensive. (Def. Mem. at 43.) While this may be true, the CDC's Moratorium is nonetheless comprehensive in its own right. The definition of "covered person" in that moratorium includes, among other things: any individual who expects to earn no more than $99,000 in annual income for calendar year 2021, who is using their best efforts to make timely payments, and for whom "eviction would likely render the individual homeless, or force the individual to move into and live in close quarters in a new congregate or share living setting—because the individual has no other available housing options."

At bottom, the CDC's Moratorium already does everything that Defendants hope to achieve through the Moratorium. It curtails the potential risk of homelessness of economically-disadvantaged individuals during a pandemic. No further bans are necessary to accomplish Defendants' goals.

---

[5] Available at https://evictionlab.org/eviction-tracking/.
[6] Available at https://www.mercatus.org/bridge/commentary/false-alarm.

## CONCLUSION

Defendants have decided to thrust the burden of the pandemic's economic fallout on landlords without availing themselves of alternative means of satisfying their interests. While Defendants' interests in public health are important, they cannot impose upon individual property owners public burdens "which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Plaintiff respectfully ask this Court to grant his Motion for Preliminary Injunction and for Summary Judgment, and to deny Defendants' Cross-Motion for Summary Judgment and Motion to Dismiss.

Respectfully submitted,

*/s/ Carl D. Neff*
Carl D. Neff (D.C. Bar No. 987577)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Tel.: (302) 482-4244

Dated: February 19, 2021                                     *Pro se Plaintiff*

18